# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

Yolanda Young-Smith )
**PLAINTIFF** )
*[Type or print your name on the line above]* )
)
)
)
 v. )
Rebecca A. Holt , )
**DEFENDANT** )
*[Type or print only the name of the first* )
*person you are suing. List everyone you* )
*are suing on page 2.]* )

3:12CV 275

Cause No. _____

*[Leave this blank, the clerk will*
*supply the cause number when*
*your case is received.]*

## COMPLAINT
## 42 U.S.C. § 1983

### I. PARTIES

A. PLAINTIFF *[You are the plaintiff in this lawsuit. Neatly print or type your information below.]*

1. Yolanda Denise Young-Smith

   Name: First       Middle       Last

2. What is your address: 1529 Ash Drive West
   Elkhart, IN 46514

   Phone number (574) 361-9763

B. DEFENDANT(S) How many defendants are you suing: 5

*[The defendants are the people you are suing. Print or type the defendant's name, job title, the state or local government agency the defendant works for, and the address of that government agency. Remember to include the defendant you named in the caption on page one. If you are suing more than one defendant, underline number them.]*

(Revised May 2, 2006)

| # | Defendant's Name | Job Title/Government Agency | Work Address |
|---|---|---|---|
| 1. | Rebecca A. Holt | Unknown/Non | 63436 W Fish Lake Rd Sturgis, MI 49091-9643 |
| 2. | Stephen A. Yokich | Attorney/Non | Cornfield and Feldman 25 East Washington Street Suite 1400 Chicago, Illinois 60602-1803 |
| 3. | Jaime L. Standridge | Unknown/Non | 23770 Stonegate Cir Elkhart, IN 46517 |
| 4. | James W. Holt | Unknown/Non | 63436 W Fish Lake Rd Sturgis, MI 49091-9643 |
| 5. | Ivan E. Bodensteiner | Attorney/Non | 7 Napolean Street Valparaiso, IN 46383 |

## II. CAUSE(S) OF ACTION WITH SUPPORTING FACTS

Write why you are suing each defendant. Write who, what , when , where, and how you believe your rights were violated. It is **VERY IMPORTANT** that you use each defendant's name in describing what happened to you. If you do not write what each defendant did, the court will not know why you are suing and that defendant will be dismissed.

Explain what constitutional or federal law right, privilege or immunity each defendant violated. Do not cite or quote cases or statutes. If you want to make legal arguments or citations, you must file a separate memorandum of law. Do not attach it to this complaint.

Write a new paragraph for each violation. Name each defendant involved in that violation.

**Number your paragraphs.**

1.  On June 01, 2010, Defendant Rebecca A. Holt (Ms. Holt) made knowingly false statements to others in an effort to continue to defame Plaintiff Young-Smith.

2.  Ms. Holt made false statements to Sergeant Bruce L. Morse, regarding Plaintiff including statements that Young-Smith was stalking her (Ms. Holt) and Mrs. Holt's adult children and caused Sergeant Morse to publish a false document on June 01, 2010.

3.  Ms. Holt, a white woman is married to James Holt (Mr. Holt), a white man. Mrs. Holt engaged in open affairs with several black coworkers for over 2 years. Ms. Holt was jealous of plaintiff and other minority women who talked to Ms. Holt's then boyfriend, Robinson, during the course of a workday.

Cause(s) of Action with Supporting Facts (continued)

4. Ms. Holt's defamation began in 2006 when Holt began harassing, stalking and threatening, Plaintiff; Holt also distributed demeaning and derogatory letters (with plaintiff's name in them) and bullied Plaintiff and other minority women who talked to one of her (Mrs. Holt's) boyfriends.

5. Ms. Holt wrote letters with false derogatory and defamatory statements about Robinson wanting to have a relationship Plaintiff; Holt falsely accused Young-Smith of spending

(Continued on separate sheet)

## III. PREVIOUS LAWSUITS

Have you ever sued anyone for the same things you wrote about in this complaint?

☒ NO   ☐ YES – *[Print or type the following information about the case. Attach additional sheets if there is more than one prior case.]*

Court: _N/A_

Judge: _N/A_   Docket Number: _N/A_

Date filed: _N/A_   Date closed: _N/A_

## IV. RELIEF

Write exactly what you want the court to do for you. This court cannot order that a defendant be fired, investigated, or criminally prosecuted.

1. This harm has occurred and continues to occur and plaintiff has been harmed in an amount of _that_ exceeds $350,000.00 (Three Hundred and Fifty Thousand Dollars and zero cents). _The exact amount is not known, but exceed $75,000.00 and (over $350,000.00) yrg 5/31/12_

2. Wherefore, Plaintiff, pro se, respectfully prays for judgment in her favor against Defendant Yokich, Rebecca Holt, James Holt, and Jaimie Standridge, and Ivan E. Bodensteiner and for the defendant to decease making defamatory statements and all other just and proper relief.

3. Wherefore, Plaintiff, pro se, respectfully prays for judgment in his favor against Defendant Yokich and for all other just and proper relief.

4. Plaintiff .respectfully requests a trial by jury.

3

II. CAUSES OF ACTIONS WITH SUPPORTING FACTS (1st page of continued)

5. time with Ms. Holt's boyfriend, Jimmy Robinson (Robinson). Plaintiff is happily married and Plaintiff's husband was going through cancer treatment at the onset of the defamation. Plaintiff assured Ms. that she had no interest in her boyfriend; Plaintiff has never had an affair.

5. Ms. Holt conveyed false information to others in the community and caused others to spread harmful defamatory statements. Ms. Holt defamed Plaintiff began as early as 2006, continued through June 1, 2010; in addition, Ms. Holt caused Plaintiff to be defamed in December 2010 and in 2011.

6. Ms. Holt had an open affair with several black men that disrupted the workplace for several years.

7. Ms. Holt and her boyfriend drug (unwillingly invited) into Plaintiff in her affair when she (Ms. Holt) became jealous of Plaintiff wrongly believing that Plaintiff wanted a relationship with her boyfriend or Ms. Holt's boyfriend wanting a relationship with Plaintiff.

8. Ms. Holt wrote defamatory letters accusing Plaintiff of wanting her boyfriend, Robinson.

9. Ms. Holt's jealousies lead to threats, stalking, harassment and bully to Plaintiff and other women.

10. Ms. Holt's had an open affair and told Plaintiff, Human Resource Supervisor Theresa Englebrecht (Englebrecht), union committee members and other that she and  Mr. Holt had an open relationship and that Mr. Holt was aware of her (Ms. Holt's) long term open affair(s).

11. Becky was/is aware that Mr. Holt began coming to the job where Ms. Holt and Plaintiff worked in 2006; Mr. Holt worked in Niles.

12. Ms. Holt is aware that she told Englebrecht to tell Mr. Holt that her affair with Robinson had ended in 2004 or 2005 and that Plaintiff was the one having an affair and that Robinson had used Ms. Holt and Plaintiff.

13. Ms. Holt told Englebrecht and Plaintiff that Mr. Holt did not like black people, and he would hurt someone if he found out she (Ms. Holt) was sleeping with black men.

14. Plaintiff does not know whether Mr. Holt dislikes black people, as Mr. Holt conveyed to Plaintiff and others; Plaintiff do know that Mr. Holt agreed to participate in Plaintiff's demise (this participation is discussed later). Plaintiff is an African American.

15. Ms. Holt knew the information was false and caused Englebrecht, Mr. Holt and others in the community to defame Plaintiff in 2006 – December 2010 and presently. These statements were not privileged because they were not relevant to the judicial proceedings.

16. Plaintiff has during all this time enjoyed a good reputation, both generally and in her duties at her church, in the community and in her profession.

17. Ms. Holt caused these false statements to be repeated in and out of judicial proceedings.

18. Ms. Holt caused Englebrecht and others to make knowingly false statements that Plaintiff was engaged in a relationship with Ms. Holt's boyfriend, Robinson; Ms. Holt asked Englebrecht to defame Plaintiff and to mask the length of time she (Ms. Holt) engaged in affairs with other men.

19. Ms. Holt knew Plaintiff was married, knew Plaintiff's husband was undergoing cancer treatment, and knew the false statements she made and caused to be made would damage Plaintiff's reputation and Plaintiff would be emotionally harmed, including loss of reputation, discredit in her profession, emotional distress, humiliation, frustration, anger, and loss of time attempting to correct and rectify the damage.

20. Plaintiff did not know Ms. Holt or any of Ms. Holt's boyfriends outside of work; specifically, Ms. Holt's then boyfriend, Robinson.

21. . Ms. Holt's statements that Plaintiff wanted an affair with her (Becky's) boyfriend was false or made with reckless disregard as to the truth or falsity of such statements and were made with malicious intent.

22. Ms. Holt falsely told others in the community that Plaintiff called her husband and told him about her affair. Ms. Holt and not Plaintiff told Mr. Holt about the affair.

23. Ms. Holt knows or should have known that Plaintiff only talked to Mr. Holt after Plaintiff was told Mr. Holt was aware of Becky's affair and after Englebrecht told Plaintiff, "I told Mr. Holt that the only reason you came to him was because Robinson (or Englebrecht) could not make Becky leave you alone."

24. Ms. Holt knows that Plaintiff engaged in mutual conversation with Mr. Holt in an effort to clear her name.

25. Plaintiff had completed her studies in Organization Management, her Certificate in Paralegal Studies and was planning for a career in the legal profession when Plaintiff's Plaintiff became the primary victim of Ms. Holt; Ms. Holt was jealous of Plaintiff and accused Robinson of wanting a relationship with Plaintiff.

26. Ms. Holt's continues to make or cause false defamatory statements to be made about Plaintiff June 01, 2010 when Ms. Holt accused Plaintiff of stalking her (Ms. Holt) and her adult children.

27. Ms. Holt has made and caused to be made, false defamatory statements within the past 2 year statute of limitation for defamation and defamation per se.

28. Ms. Holt has made and caused to be made, false defamatory statements within the statute of limitations that were not privileged because they were not relevant to the judicial proceeding.

29. Ms. Holt wrote and distributed letters with Plaintiff's name in them. Ms. Holt knew or should have known that the letters and statements were false, knew the statements would be published and knew or should have known that the statements would harm plaintiff's reputation, cause Plaintiff to be shunned or ridiculed, or injure Plaintiff's career or future aspirations.

30. Ms. Holt's committed and caused to be committed, defamation, defamation per se and other actions that have prevented Plaintiff from becoming gainfully employed in her chosen profession.

INJURIOUS FALSEHOOD

31. Plaintiff incorporates paragraphs 1-30 of this complaint.

32. Ms. Holt published and caused to be published false statements that are harmful to Plaintiff and resulted in pecuniary loss.

33. Ms. Holt knew Plaintiff did not stalk her or her children, knew Plaintiff did not have a relationship with her boyfriend and knew Plaintiff did not tell Mr. Holt of her affair(s).

34. Ms. Holt intended to cause pecuniary harm to Plaintiff,

35. Ms. Holt knew that the statements were false.

INVASION OF PRIVACY; INTRUSION INTO PLAINTIFF'S PRIVATE LIFE

INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

36. Plaintiff incorporates paragraphs 1-35 of this complaint.

37. Ms. Holt intentionally or negligently caused Plaintiff emotional distress.

38. Ms. Holt invaded Plaintiff's privacy and intruded into Plaintiff's private life causing Plaintiff harm.

DEFAMATION by Defendant Stephen Yokich

39. As recent as May 2012, and in as early as 2009, Defendant Stephen Yokich, (Yokich) defamed Plaintiff and caused knowingly false defamatory communication of a permanent sort to be published when he made knowingly false statements regarding Plaintiff.

40. Yokich made and caused knowingly false statements that injured or caused further injuries to Plaintiff's reputation, respect and good will, confidence in Plaintiff, and excited derogatory feelings or opinions.

41. Yokich made knowingly false statements and gave false details that were not relevant to the judicial proceeding to mask the years of affairs by Ms. Holt, to punish Plaintiff for not agreeing to allow Ms. Holt and Ms. Englebrecht to use her name to mask Ms. Holt's affairs with black men, to punish Plaintiff for refusing to be horse traded (which the union called slave trading).

42. Yokich statement published November 28, 2011, that Plaintiff had a personal conflict in which Plaintiff was at fault was not privileged because the libelous statements was knowingly false, made out of malice and were not relevant to the pending charge of "the union falling to file a grievance based on race."

43. Yokich made knowingly false statements that, "Young-Smith (Plaintiff) had apparently discovered two-coworkers engaged in a sexual affair and contacted the husband of the female co-worker by telephone to inform him of the affair; Yokich knew Plaintiff did not tell Mr. Holt of his wife's affair. Yokich knew or should have known that the statement was false.

44. Yokich made the statements to intentionally defame Plaintiff's name and gave specific and knowingly false detailed information ("when plaintiff discovered the affair" and "Plaintiff told Mr. Holt of the affair") to continue to falsely convince Mr. Holt that Plaintiff and not Mrs. Holt was engaged in a relationship. Plaintiff did not know Holt or Robinson outside of work; Plaintiff never had an affair or a relationship with Robinson.

45. Yokich made these knowingly false statements during judicial proceedings to prejudice the court and to punish Plaintiff for not agreeing to be slave-traded. Yokich made the statement on or about 5/13/2010 and caused the false statement to be published again on 03/03/2012.

46. Yokich knowingly false statements were not privileged because the libelous statements were knowingly false, made out of malice, and were not relevant to the pending charge of "the union's handling of her discharge grievance."

47. Yokich caused communication of a permanent sort that injured Plaintiff's reputation, respect and good will, confidence in Plaintiff, and excited derogatory feelings or opinions of Plaintiff to be published

48. Yokich defamed Plaintiff because Plaintiff refused to be a part of the United Steelworkers of America practice of "horse trading" which union officials at Local 12273 called "slave trading" (deals of trading white employees grievances for black employees grievances).

49. Yokich and others wanted Plaintiff to agree to tell Mr. Holt that she (Plaintiff) was having a relationship with Ms. Holt's boyfriend, Robinson and that Ms. Holt had a one-time affair in 2005 and not 2003-2006.

50. Yokich made the statements to mask the length of time of Ms. Holt's affairs and stated that it did not matter if it (the false statements) harmed Plaintiff because Plaintiff is black (African-American).

51. Yokich knew Plaintiff was married and knew the false statements would damage Plaintiff's reputation and Plaintiff would be emotionally harmed, including loss of reputation, discredit in her profession, emotional distress, humiliation, frustration, anger, and loss of time attempting to correct and rectify the damage.

52. Yokich knew the knowingly false defamatory statements were not privileged because they were not relevant to the judicial proceeding or charges Plaintiff had against the union.

53. Yokich knew that Becky engaged in a long-term tumultuous affair in which Plaintiff became a victim, but falsely stated that "Young-Smith *discovered* that Holt( Ms. Rebecca Holt), who is married, was engaged in a sexual affair with Robinson. Young-Smith then contacted Ms. Holt's husband by telephone from the workplace to inform him of the affair." Yokich knew that Plaintiff had an open affair and that Plaintiff was Becky's fifth or sixth victim and that Plaintiff did not tell Mr. Holt his wife was having an affair.

54. Yokich knew that the statement was false or acted in reckless disregard of its truth or falsity.

55. Yokich was aware that Ms. Holt told others that she had an open marriage and that Mr. Ms. Holt knew of her (Ms. Holt's) affair because she (Ms. Holt) had conveyed it to him (Mr. Holt) and not the Plaintiff.

56. Yokich knows or should have known that Plaintiff did not know Ms. Holt or Robinson outside of work.

57. Yokich statement was knowingly false and made to continue to mask the length of time Ms. Holt was engaged in an open affair.

58. Yokich knew that Ms. Holt told Englebrecht that Mr. Holt did not like black people and got Mr. Holt to participate in the defamation of Plaintiff.

59. Yokich statements were made out of malice to punish Plaintiff for refusing to allow her name to be used to mask the affairs by Ms. Holt.

60. Yokich made the false statements out of malice to prejudice the court.

61. Yokich was aware that these statements were not relevant to the charges, specifically, the union's failure to file a grievance based on race. These false statements were made or caused to be made within the 2 year statute of limitation for defamation and are not privileged because they were made out of malice to defame and were not pertinent to the judicial proceedings.

62. Defendant Yokich defamed Plaintiff name in the November 28, 2011, Brief in Support of Motion in Limine by telling the court that Plaintiff called Ms. Holt's husband from work and did so when told not to. Yokich knows these statements are false and made statements to defame Plaintiff. Again, Yokich caused communication of a permanent sort that injured Plaintiff's reputation, respect and good will, confidence in Plaintiff, and excited derogatory feelings or opinions of Plaintiff to be published in May 2012.

63. Yokich knew the statements were false and made the statements to defame Plaintiff, prejudice the court and to continue to punish Plaintiff for not willingly allowing Mrs. Holt, Englebrecht and others to use Plaintiff's name to mask the years of affairs.

64. Yokich Plaintiff's name was falsely used and that Plaintiff would be harmed by the false, exaggerated, and defamatory statements.

65. Yokich made statements to prejudice the court with reckless disregard of the damage it would add to Plaintiff's reputation, marriage or good-will in the community.

66. Yokich made false statements out of malice because Plaintiff would not allow Ms. Holt to use her name to mask the length of time of Ms. Holt's affair.

67. Yokich was aware that Plaintiff had mutual conversations with Mr. Holt; Mr. Holt initiated some phone calls; Yokich knew that Plaintiff talked to Mr. Holt but not to inform Mr. Holt of the affair, but rather to tell Mr. Holt that they had falsely accused Plaintiff of having an affair and had used Plaintiff's name without Plaintiff's permission.

68. Yokich defamed Plaintiff when he knowingly and falsely reported that Plaintiff had personal issues with two employees Yokich knew or should have known that Plaintiff did not have personal issues with either Ms. Holt or Robinson and Plaintiff was unwilling invited into Ms. Holt and Robinson's affair.

69. Yokich knew Ms. Holt had been told to leave her personal business outside of the workplace in 2004, 2005 and 2006. Yokich knew that Ms. Holt not Plaintiff had caused the workplace to be hostile and Plaintiff was a victim of Ms. Holt's bullying.

70. Yokich knew made false statements in November 2011, that Plaintiff had a personal conflict in which Plaintiff *was at fault*, to further defame Plaintiff; Yokich knew the statements were false, were not privileged and outside of the scope of what was relevant to the judicial proceeding and were made to prejudice the court and harm Plaintiff.

71. Yokich knew that Plaintiff was a victim of Ms. Holt's stalking, harassment, threats, bullying and that Ms. Holt wrote and distributed letters accusing Plaintiff of having or wanting a relationship with her (Ms. Holt's) boyfriend and stalked, harassed and threatened Plaintiff.

72. Yokich knew Plaintiff had attained her Bachelor's Degree and Paralegal Certificate and was waitlisted at Valparaiso Law School in 2008, knew or should have known that his false statements would prevent Plaintiff from becoming gainfully employed in the legal profession.

73. Plaintiff has during all this time enjoyed a good reputation, both generally and in her duties at her church, as a community volunteer.

74. The continuous libelous knowingly false statements by Defendant Yokich clearly exposes plaintiff to hatred, contempt, ridicule and criticism; Yokich knew that Human Resources supervisor Theresa Englebrecht told Plaintiff, United Steelworkers of America Local 12273 union committee members, International Staff Representative Phil Bischoff and union committee members, and union stewards that Mr. Holt was aware of his wife's affair.

75. Defendant Yokich knew or should have known that Englebrecht told Mr. Holt and Plaintiff that the she knew only reason she (Plaintiff) went to Mr. Holt was because she (Englebrecht) or Mrs. Ms. Holt's boyfriend, Robinson, could not make Becky stop harassing, stalking or threatening Plaintiff.

76. Defendant Yokich misconstrued evidence in an effort to defame plaintiff when he reported or caused to be reported that "She (Plaintiff) did so with the hope that the affair would stop and would cease her threatening behavior and comments toward Young-Smith, all of which she believed had occurred because of the affair." Yokich know that Plaintiff did not tell Mr. Holt of his wife's affair(s).

77. Yokich should have known that Plaintiff did hope the affair would stop, but only talked to Mr. Holt after Bayer's Human Resource Supervisor Theresa Englebrecht falsely

reported to Mr. Holt that Plaintiff was having a relationship with Ms. Holt's boyfriend, Robinson; only after Plaintiff was told that Mr. Holt could hurt someone if he found out his wife was having affairs, Englebrecht told Mr. Holt that Plaintiff was the one having an affair and because Plaintiff was black, Plaintiff's life was not important.

78. Defendant Yokich falsely reported that, "that plaintiff was bringing her personal business into the workplace and disrupting the workplace." Defendant knew that Ms. Holt had knowingly gone unpunished for having an affair that disrupted the workplace for over 2 years and not Plaintiff; Yokich knew Plaintiff was a victim of slave trading.

79. Yokich knew that Ms. Holt made racial derogatory statements to and about plaintiff; harassed, stalked, defamed Plaintiff and distributed demeaning and derogatory letters and was violent with others minorities.

80. Yokich knew or should have known that Ms. Holt bullied plaintiff, other minority women and even physically struck a black person and made false statement in an effort to denigrate Plaintiff and deter other black employees from talking to her (Ms. Holt's) boyfriend.

81. Defendant Yokich knew or should have known that  Ms. Holt openly discussed the details of her sexual encounters with Mr. Holt and Ms. Holt's boyfriend in what would make a sailor blush.

82. Yokich knew that Plaintiff was a first generation college graduate with a Bachelor in Business and had recently attained a Paralegal Certificate and was seeking employment in the pharmaceutical or in legal profession. Yokich knew the statements were false and intentionally sought to defame Plaintiff and ruin Plaintiff's reputation. Yokich knew the

statements were not privileged because they were not relevant to the pending charge of failure to file race discrimination grievances.

83. Defendant Yokich's continual false statements are not relevant to the judicial proceedings or pending charges against the union; Defendant Yokich exposed plaintiff to hatred, contempt, ridicule and defamation.

84. Yokich's statements were false or made with reckless disregard as to the truth or falsity of such statements and were made with malicious intent.

85. Yokich knew the statement were false, knew the statements would be published and knew or should have known that the statements would harm plaintiff's reputation, cause Plaintiff to be shunned or ridiculed, or injure plaintiffs career, career aspiration and volunteer commitments.

86. Yokich knew or should have known the false statements would further damage Plaintiff's reputation, and Plaintiff would be emotionally harmed, including loss of reputation, discredit in her profession, emotional distress, humiliation, powerlessness, frustration, anger, and loss of time attempting to correct and rectify the damage.

87. Plaintiff respectfully requests a jury trial.

INJURIOUS FALSEHOOD

88. Plaintiff incorporates paragraphs 39-87 of this complaint.

89. Yokich published and caused to be published false statements that are harmful to Plaintiff and resulted in pecuniary loss.

90. Yokich knew Plaintiff did not have a relationship with her boyfriend and knew Plaintiff did not tell Mr. Holt of her affair(s).

91. Yokich intended to cause pecuniary harm to Plaintiff,

92. Yokich knew that the statements were false.

INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff incorporates paragraphs 39-92 of this complaint.

94. Yokich knowingly false statements were intended to harm the Plaintiff's reputation and invade the plaintiff's privacy.

95. The knowingly false statements were false or made with reckless disregard as to the truth or falsity of such statements.

96. The knowingly false statements were made with malicious intent.

DEFAMATION by Defendant Ivan E. Bodensteiner

97. As recent as May 2012, and in as early as 2009, Defendant Ivan E. Bodensteiner (Bodensteiner), Plaintiff former attorney, defamed Plaintiff and caused knowingly false defamatory communication of a permanent sort to be published when he made knowingly false statements regarding Plaintiff.

98. Bodensteiner made and caused knowingly false statements that injured or caused further injuries to Plaintiff's reputation, respect and good will, confidence in Plaintiff, and excited derogatory feelings or opinions.

99. Bodensteiner made knowingly false statements and gave false details that were not relevant to the judicial proceeding to mask the years of affairs by Ms. Holt, to punish Plaintiff for not agreeing to allow Ms. Holt and Ms. Englebrecht to use her name to mask Ms. Holt's affairs with black men.

100.     Bodensteiner statement published March 03, 2011, that Plaintiff had a personal conflict in which Plaintiff was at fault was not privileged because the libelous statements was knowingly false, made out of malice and was not relevant to the judicial proceeding.

101.     Bodensteiner made knowingly false statements that, "Young-Smith's (Plaintiff's) version of these events is a bit different. She (Plaintiff) asserts *that after she learned* of the affair, Holt became increasingly hostile to her and another co-worker accusing both of desiring a relationship with Robinson)".

102.     Bodensteiner made this knowingly false statement out of malice to mask the years of affairs Defendant Holt had with other men and because Plaintiff would not agree to be slave-traded.

103.     Bodensteiner made false statements to that Plaintiff: had *apparently discovered* (Bodensteiner knew Plaintiff did not have to discover because the two-coworkers a long-term open affair) two-coworkers engaged in a sexual affair and contacted the husband of the female co-worker by telephone to inform him of the affair. Bodensteiner made the false statement to punish Plaintiff, stating that Mr. Holt should not have to know that his wife was sleeping with a black man."

104.     Bodensteiner falsely reported that Plaintiff "contacted the husband (Mr. Holt) of the female co-worker (Ms. Holt) by telephone to inform him of the affair.

105.     Bodensteiner knew that the statement was false or acted in reckless disregard of its truth or falsity.

106.     Bodensteiner knew the false statements would cause damage to Plaintiff's reputation and Plaintiff would be emotionally harmed, including loss of reputation,

discredit in her profession, emotional distress, humiliation, frustration, anger, and loss of time attempting to correct and rectify the damage.

107.     Bodensteiner made the false statements out of malice, to punish Plaintiff for telling Mr. Holt that I had been slave-traded and shared how his wife acted at work.

108.     Bodensteiner intentionally made false statements or and caused knowingly false defamatory communication of a permanent sort to be published when he made knowingly false statements regarding Plaintiff.

109.     Bodensteiner made these knowingly false statements during judicial proceedings to prejudice the court and to punish Plaintiff for not agreeing to be slave-traded. These statements were knowingly false and are not covered by privilege because they were not relevant to the judicial proceeding; specifically, "failure to file a race based grievance."

110.     Bodensteiner defamed Plaintiff by intentionally omitting evidence regarding defamation committed by Defendant Yokich.

111.     Bodensteiner caused communication of a permanent sort that injured Plaintiff's reputation, respect and good will, confidence in Plaintiff, and excited derogatory feelings or opinions of Plaintiff to be published

112.     Bodensteiner knew Plaintiff was married and knew the false statements could damage Plaintiff's marriage and reputation and Plaintiff would be emotionally harmed, including loss of reputation, discredit in her profession, emotional distress, humiliation, frustration, anger, and loss of time attempting to correct and rectify the damage.

113.     Bodensteiner knew the knowingly false defamatory statements were not privileged because they were not relevant to the judicial proceeding or charges Plaintiff had against the union.

114.    Bodensteiner made the false statements out of malice to prejudice the court.

115.    Defendant Bodensteiner defamed Plaintiff by omitting evidence when Defendant Yokich knowingly falsely reported November 28, 2011, that Plaintiff called Holt's husband from work and did so when told not to. Bodensteiner knew this statement was false and made statements to defame Plaintiff.

116.    Bodensteiner caused communication of a permanent sort that injured Plaintiff's reputation, respect and good will, confidence in Plaintiff, and excited derogatory feelings or opinions of Plaintiff to be published in May 2012.

117.    Bodensteiner defamed Plaintiff when he omitted evidence when Defendant Yokich made knowingly false statements in November 2011 that Plaintiff had a personal conflict in which Plaintiff *was at fault*.

118.    Bodensteiner knew the statements were false and omitted evidence to allow the false statements to go unfettered. Bodensteiner knew the knowingly false statements were not privileged and outside of the scope of what was relevant to the judicial proceeding and were made to prejudice the court and harm Plaintiff.

119.    Bodensteiner knew Plaintiff had attained her Bachelor's Degree and Paralegal Certificate and was waitlisted at Valparaiso Law School in 2008, knew or should have known that his false statements would prevent Plaintiff from becoming gainfully employed in the legal profession.

120.    Plaintiff has during all this time enjoyed a good reputation, both generally and in her duties at her church, as a community volunteer.

121.    Bodensteiner defamed Plaintiff by omission when he (Bodensteiner) omitted evidence to allow Defendant Yokich to make false and misconstrued statement, "She

(Plaintiff) did so with the hope that the affair would stop and Holt would cease her threatening behavior and comments toward Young-Smith, all of which she believed had occurred because of the affair." Bodensteiner and Yokich know Plaintiff did not tell Mr. Holt of his wife's affair(s).

122.    Bodensteiner defamed Plaintiff by omission when he allowed Defendant Yokich falsely reported that, "that plaintiff was bringing her personal business into the workplace and disrupting the workplace." Bodensteiner knew that Mrs. Holt had knowingly gone unpunished for having an affair that disrupted the workplace for over 2 years and not Plaintiff; Defendant Bodensteiner knew Plaintiff was a victim of slave trading.

123.    Yokich knew that Plaintiff was a first generation college graduate with a Bachelor in Business and had recently attained a Paralegal Certificate and was attaining an Associate in Paralegal Studies and was seeking employment in the pharmaceutical or legal profession.

124.  Bodensteiner statements and omissions where made with reckless disregard as to the falsity of such statements and were made with malicious intent.

125.    Bodensteiner knew the statement were false, knew the statements would be published and knew or should have known that the statements would harm plaintiff's reputation, cause Plaintiff to be shunned or ridiculed, or injure plaintiffs career, career aspiration and volunteer commitments.

126.    Bodensteiner knew or should have known the false statements would further damage Plaintiff's reputation, and Plaintiff would be emotionally harmed, including loss of reputation, discredit in her profession, emotional distress, humiliation, powerlessness, frustration, anger, and loss of time attempting to correct and rectify the damage.

127.      Plaintiff respectfully requests a jury trial.

## INJURIOUS FALSEHOOD

128.      Plaintiff incorporates paragraphs 97-127 of this complaint.

129.      Bodensteiner made false statements, published and caused to be published false

statements that are harmful to Plaintiff and resulted in pecuniary loss.

130.      Bodensteiner omitted evidence to cause Plaintiff to be defamed and to give

credence to the false statements made by Defendant Yokich and others.

131.      Bodensteiner intended to cause pecuniary harm to Plaintiff,

132.      Bodensteiner knowingly made false statements and knowingly omitted evidence.

## INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

133.  Plaintiff incorporates paragraphs 97-132 of this complaint.

134.  The knowingly false statements were made with malicious intent.

## DEFAMATION Defendant Mr. Holt

135.  Mr. Holt (Mr. Holt) made false statements or caused false statements to be made that

defamed the plaintiff in 2006 through December 2010.

136.  Mr. Holt gave Plaintiff's employer tapes that he falsified or gave them to the employer

tapes to be falsified.

137.      Mr. Holt knew Plaintiff was married, knew Plaintiff's husband was undergoing

cancer treatment, and knew the false statements he made and caused to be made would

damage Plaintiff's reputation and Plaintiff would be emotionally harmed, including loss

of reputation, discredit in her profession, emotional distress, humiliation, frustration,

anger, and loss of time attempting to correct and rectify the damage.

138. Mr. Holt made knowingly false statements when he stated that "Jimmy (Robinson) used you and Becky …" Mr. Holt knew or should have known that the statement was false, that Robinson and Mr. Holt used my name without my permission.

139. Mr. Holt knew Ms. Holt had engaged in an affair but, agreed to defame Plaintiff by falsely repeating that Plaintiff was having an affair with his wife's black boyfriend, Robinson and that Robinson had used Plaintiff.

140. Mr. Holt knew that Plaintiff did not tell him that his wife had an affair.

141. James knew or should have known that Plaintiff did not know Ms. Holt or Robinson outside of the workplace and Ms. Holt was a victim of Ms. Holt's threats, bullying, stalking and defamation.

142. Mr. Holt made false or caused false statements to be made by calling Plaintiff's job and making knowingly false statements.

143. Mr. Holt intentionally caused and libelous statements and publications that caused and continues to cause Plaintiff emotional distress.

144. Mr. Holt published and caused to be published false statements that are harmful to Plaintiff and resulted in pecuniary loss.

145. Mr. Holt knew Plaintiff did not stalk her or her children, knew Plaintiff did not have a relationship with her boyfriend and knew Plaintiff did not tell him of her affair(s).

146. Mr. Holt intended to cause pecuniary harm to Plaintiff,

147. Mr. Holt knew that the statements were false.

INTENTIONAL or NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

148. Plaintiff incorporates paragraphs of this complaint.

149. Mr. Holt knowingly false statements were intended to harm the Plaintiff's reputation and invade the plaintiff's privacy.

150. Mr. Holt knowingly made false statements with reckless disregard as to the truth or falsity of such statements.

151. The knowingly false statements were made with malicious intent.

COUNT EIGHT   DEFAMATION by Jaime Standridge

152. Defendant Jaime Standridge (Standridge) made and repeated to make false demeaning, and derogatory statements about plaintiff up to and including June 2, 2010.

153. Standridge made false statements that Plaintiff was stalking, threatening and harassing her(Jaime).

154. Sandridge should have known that Plaintiff was a victim of Holt's bullying and Plaintiff, not Holt was the victim of repeated defamation, threats and stalking.

155. Standridge was repeating knowing false information about Plaintiff and had defamed Holt with total disregard of the truth.

156. Standridge knew or should have known that statements were false and continued to transport statements to others without regard to the truth.

157. In June 2010, Standridge falsely told others that Plaintiff committed defamation and stalking with disregard of the truth.

158. Standridge should have known that the information was false and continued to make the statements without regard to the damage it would further do damage to the plaintiff's reputation.

159. Standridge know or should have known that Plaintiff did not commit stalking or harassment when Plaintiff asked her, Ms. Holt and Mr. Holt to stop defaming Plaintiff's.

160. Standridge knew or should have known that Plaintiff's reputation would be further harmed, Plaintiff would be emotionally harmed, including loss of reputation,

discredit in her profession, emotional distress, humiliation, frustration, anger, and loss of time attempting to correct and rectify the damage.

## V. VERIFICATION AND SIGNATURE

### Initial Each Statement and Sign at the Bottom

N/A
I have included two properly completed summons forms (available from the clerk) for each defendant I am suing, including full name, job title and work address.

N/A  I have included one properly completed process receipt and return form (USM-285) (available from the U.S. Marshal) for each defendant I am suing.

In addition to this complaint with an original signature, I have included one copy of this complaint for each defendant and one extra for the court.

I have included full payment of the filing fee **OR** attached a properly completed petition to proceed *in forma pauperis* (available from the clerk).

I agree to promptly notify the clerk of any change of address.

I have read all of the statements in this complaint. *[Do not forget to keep a copy for your records.]*

I declare **under penalty of perjury** that the foregoing is true and correct.

Signed this ___31___ day of ___May___, 20_12_.

Your Signature

Mail all of these papers to the appropriate Clerk's office - see next page for addresses.

<u>V. VERIFICATION AND SIGNATURE</u>

## Initial Each Statement and Sign at the Bottom

*Yes*
N/A   I have included two properly completed summons forms (available from the clerk) for each defendant I am suing, including full name, job title and work address.

N/A   I have included one properly completed process receipt and return form (USM-285) (available from the U.S. Marshal) for each defendant I am suing.

*Yup*   In addition to this complaint with an original signature, I have included one copy of this complaint for each defendant and one extra for the court.

*Yup*   I have included full payment of the filing fee **OR** attached a properly completed petition to proceed *in forma pauperis* (available from the clerk).

*Yup*   I agree to promptly notify the clerk of any change of address.

*Yup*   I have read all of the statements in this complaint. *[Do not forget to keep a copy for your records.]*

*Yup*   I declare **under penalty of perjury** that the foregoing is true and correct.

Signed this __31__ day of __May_____, 20_12_.

_____
Your Signature

Mail all of these papers to the appropriate Clerk's office - see next page for addresses.

4